13432

RICHARDSON v. BYRD ET AL.

(164 S. E., 648)

*Messrs. Hughs & Hughs,* for appellants,

*Mr. R. T. Jaynes,* for respondent,

June 16, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This is a most interesting case, and its proper decision is a matter of far reaching importance. The Circuit decree, which will be reported, sets out the history of the case, and it need not be repeated here. The case has been presented with thoroughness and rare ability. The decree of Judge Johnson evinces a close study of the evidence and the law, and it is a clear and strong exposition of his views, in which in the main this Court concurs. Because of its interest and

importance we have given it thorough consideration and study.

The primary question involved in the case is, Did the testator intend to incorporate in his will, as a part thereof, the deeds he had had prepared, and which he signed prior to the execution of the will, and on the same day, by which he sought to convey certain real estate to his son, Elzie L. Richardson, the respondent herein, and certain other real estate to his daughter, Mrs. Ella R. Ballenger, and her children, Woodfin R. Ballenger and Marion E. Ballenger, who are appellants herein? Related to this question is the further question, Did the presiding Judge err in excluding certain testimony offered by appellants of the circumstances attending the executing of the deeds and the will, as evidence of the identity of the deeds mentioned in the will, and as indicative of the intention of the testator to incorporate the deeds in the will? If it be held that the rule in this respect was rather rigidly enforced, nevertheless, we could not say it was reversible error. The testimony offered was taken subject to objection, and appears in the transcript of record, and it is not sufficient to overcome the evidence, inherent in the will itself, that the testator did not intend that the deeds should be incorporated in his will, become a part thereof, and speak from the day of his death, as his will must do. The deeds undertook to dispose of all his real estate. Yet in the body of his will he said:

"Item Three: *It is my will that my estate shall be held intact by my executors until my directions can be carried out, and during the intervening period, I hereby direct them to take charge of all my property not disposed of in special legacies, or by deeds which I have executed, and to lease, rent, and let the real estate, and keep my money invested so as to produce an income: and I then direct them to collect the rents, income and profits of all kinds and out of them to pay all taxes, insurance on buildings, and general upkeep on the property in their charge only."* (Italics added.)

The testator then directs that out of the income of the estate certain bequests be paid charitable institutions therein named each year, *"until the general division of my estate is made."* Further he leaves it to his executors to determine whether, if there be any balance of the annual income, "it shall be paid to the residuary legatees and *devisees* at the close of each annual period, *or whether they shall add it to the corpus of my estate for distribution at the final division."*

In the sixth item he gives his executors power, if it should become necessary, to sell any real estate which he has not disposed of, either at private or public sale, etc.

This will was executed on the 20th day of April, 1927. Five months thereafter, September 20, 1927, he made a codicil to his will, by which he made a larger provision for his afflicted granddaughter, Myrtis Richardson; to accomplish this end he gave to his executors this power: "I direct my executors to pay to her at such times as they deem best, *one-half of the income of the storeroom in the Town of Seneca just east of the Palmetto Hotel Building."* (Italics added.)

It is undisputed that all of his real estate was "disposed of" by the deeds which he signed the day the will was drawn, but which were not delivered in his lifetime. It is conceded that they cannot operate as deeds, and that issue does not arise here.

An analysis of the terms of the will and the codicil leads to the inevitable conclusion that the testator intended the deeds he had prepared to operate as deeds and to be delivered at the final distribution of his estate.

The estate was to be held intact by his executors till his directions were carried out; meantime the executors were to take charge of all of his property, lease, rent, and let it, to produce an income; out of the rents, income, and profits of all kinds to pay taxes, *insurance on buildings,* and keep up the property. It would be utterly impossible to do these

things if the deeds were incorporated in the will and spoke from the death of the testator.

That he contemplated that the estate be held intact, which included the holding of the deeds by the executors, is made manifest by the provisions of Item 3 of the will that the executors should pay the bequests to certain charitable institutions, annually, *"until the general division of my estate is made,"* and by the provision of Item 4 that the executors might in their discretion pay to the residuary legatees any annual balances left from the income, "or add it to the corpus of the estate and pay it, at the final distribution."

If the testator intended that the deeds should be incorporated in the will, he would never have given his executors power to sell the real estate, all of which was included in the deeds. He knew the deeds had not been delivered. As a man of business he must have known that they were inoperative as deeds until they were delivered. Therefore, when he uses in connection with the gift to the executors the power to sell any real estate "which I have not disposed of" the fair inference is that he meant real estate which he might sell or dispose of between the time of making the will and his death. The deeds were undelivered; he could change them at will, just as he could change his will. That he contemplated the real estate should remain in the hands of his executors till the final distribution of his estate is made further manifest by the provision in the codicil to the will which directs the executors to pay to Myrtis Richardson one-half of the income from the storeroom in the Town of Seneca, which storeroom was included in the deed which he had made to his son, Elzie Richardson.

In the light of these things which *are* included in the will, we must conclude that the testator never intended that the deeds should be included therein.

The Court affirms the decree of Judge Johnson.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STAB-

LER and CARTER and MR. ACTING ASSOCIATE JUSTICE COTHRAN concur.